**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

and

**Graphic Communications International Union Local 14, AFL–CIO, Intervenor,**

v.

**PAPER MANUFACTURERS COMPANY, Warehouse Employees Local 169, a/w International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, Respondent.**

No. 85–3266.

United States Court of Appeals, Third Circuit.

Argued Jan. 14, 1986.

Decided March 18, 1986.

---

Thomas W. Budd, (argued), Clifton, Budd, Burke & DeMaria, New York City for respondent, Paper Manufacturers Co.

Bernard N. Katz (argued) Michael N. Katz, Basil L. Merenda, Meranze & Katz Philadelphia, Pa., for respondent, Warehouse Employees Local 169.

William T. Josem, (argued), Markowitz & Richman, Philadelphia, Pa., for intervenor Graphic Communications Intern. Union Local 14, AFL–CIO.

Andrew F. Tranovich, Marc B. Seidman (argued) Attys. N.L.R.B., Washington D.C. (Rosemary M. Collyer, General Counsel, John E. Higgins, Jr., Deputy General Counsel, Robert E. Allen, Associate General Counsel, Elliott Moore, Deputy Associate General Counsel, of counsel), for petitioner, N.L.R.B.

Before SEITZ and GIBBONS, Circuit Judges and BARRY, District Judge *

* Hon. Maryanne Trump Barry, United States District Judge for the District of New Jersey, sitting

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

The National Labor Relations Board petitions pursuant to section 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e) (1982), to enforce its order finding that the Paper Manufacturers Company, the employer, committed an unfair labor practice in refusing to recognize and bargain with Graphic Communications International Union Local 14, AFL–CIO (Local 14). The Board found that the employer had unlawfully recognized and bargained with another union, Warehouse Employees Local 169 a/w International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America (Local 169), and that this action constituted unfair labor practices by both the employer and Local 169. *See Paper Manufacturers Co.*, No. 4–CA–13616 and No. 4–CB–4613 (March 14, 1984) (opinion by A. Pacht, A.L.J.), *aff'd as modified*, 274 N.L.R.B. No. 70 (1985). The employer and Local 169 contend that the Board erred (1) in refusing to defer to an arbitrator's decision, and (2) in making a bargaining unit determination. We enforce.

### I.

#### Background Facts

The employer manufacturers products for the communication, office, telecommunications, and disposable medical devices industries. It has facilities in several states. Two of its major divisions are the Medical Packaging Division and the Paper Products Division. The employer's Philadelphia plant currently houses a part of the Paper Products Division as well as the Medical Packaging Division. In 1979 the employer's Philadelphia plant began to coat a product called tyvek. After coating, the product was used in the packaging of medical supplies. The employer initially shipped the coated tyvek product from the Philadelphia plant to various converters by designation.

that processed it into pouches and other finished packaging products.

In 1971 the production and maintenance employees at the Philadelphia plant selected Local 169 as their bargaining representative. Thus the Paper Products Division employees and the employees coating tyvek were in the same bargaining unit.

Sometime prior to 1976 the employer purchased LF & P, a corporation located in Peabody, Massachusetts. LF & P had been engaged in the business of converting coated tyvek into finished packaging products. Consequently, the purchase of LF & P integrated the employer into the business of converting coated tyvek into finished products. In 1978 the employer moved the pouching and printing equipment for converting tyvek from Peabody to a leased facility in Southampton, Pennsylvania, seven miles from its Philadelphia plant. Coated tyvek was thereafter transported from Philadelphia to Southampton instead of Peabody.

The employer maintained different shifts and separate seniority lists at the Philadelphia and Southampton sites. Southampton employees were paid lower wages for comparable work and received fewer benefits than did the Philadelphia employees. Each plant had a separate job classification system. The employees used different plant managers and first-line supervisors at the Southampton and Philadelphia facilities.

By January of 1982 the employer had available space in the Philadelphia plant because it had transferred the Business Products Unit of its Paper Products Division to its plant in Indianapolis, Indiana. On January 26, 1982 the employer decided that it would relocate the Southampton unit, which it referred to as its Medical Packaging Division, to the vacant space in Philadelphia. The employer had in late 1981 given several managers authority to run the operations at both the Philadelphia and Southampton facilities.

In April 1982, before the relocation of the Southampton facility took place, Local 14 asked the employer for recognition as the bargaining representative of the South-ampton Medical Packaging Division employees. The employer declined to extend recognition, and Local 14 filed a representation petition. On June 10, 1982 the Board's Regional Director in the Philadelphia office determined that the Southampton Medical Packaging Division was an appropriate unit and directed that an election be held. The employer did not contest the unit determination, but asked the Regional Director to reconsider in light of the decision that the Medical Packaging Division would be moved to Philadelphia.

The Regional Director refused to reconsider, finding no evidence that the proposed relocation would affect the composition of the unit. On July 8, 1982 a Board-supervised election was held at Southampton, in which, by a vote of twenty-six to seventeen, Local 14 was chosen as the bargaining representative. Formal certification of Local 14 by the Board was delayed until February 8, 1983 because the employer filed objections.

Meanwhile the employer proceeded with extensive physical changes in the Philadelphia plant to accommodate the move from Southampton to Philadelphia. Interior walls were constructed so that the Medical Packaging Division, which required sterile conditions, would be physically separated from those parts of the Paper Products Division still located in Philadelphia. On October 15, 1982 the employer closed its Southampton facility and moved the Medical Packaging Division to its new quarters. The employer transferred nearly all Southampton employees to Philadelphia, where they retained the same wages, benefits, and seniority as they had prior to the transfer. Three former Southampton employees—two from shipping and receiving and one truckdriver—were offered other positions in the Medical Packaging Division at Philadelphia. Several Southampton maintenance workers were merged into a larger group of maintenance employees at Philadelphia but continued to service the Medical Packaging Division equipment. Almost all job classifications in the Medical Packaging Division remained the same, not only

for the approximately forty-five Southampton employees who were transferred but also for thirty newly-hired employees. New hires in the Medical Packaging Division received identical wages and benefits, worked in the same sterile area, and dressed in similar sterile clothing as did the transferred Southampton employees.

Even before the move in October, Local 169, on September 17, 1982, told the employer that the work to be performed by the Southampton transferees or new hires in the Medical Packaging Division must be done under Local 169's contract and the employees included in the bargaining unit it represented. The company initially took no position on the bargaining unit issue but insisted that the Philadelphia contract would not apply to transferred Southampton employees. Local 169 then insisted that the Southampton employees should be treated as an accretion to the bargaining unit it represented. At that point the employer and Local 169 agreed to submit the accretion issue to arbitration pursuant to the terms of the Local 169 contract. An arbitration was held on January 12, 1983. Local 14 did not participate in it.

Before the arbitration commenced Local 14 notified the employer that it intended to file unfair labor practice charges if the employer should ignore the expected certification of its majority status. On February 8, 1983 the Board's Regional Director overruled the employer's objection to the Southampton election and certified Local 14 as the bargaining representative of the Medical Packaging Division employees. The company requested Board review of Local 14's certification. On April 14, 1983 the Board denied that request, and on April 19, 1983 Local 14 renewed a pending request to the employer that it bargain.

The Local 169/employer arbitration, meanwhile, proceeded. Although noting that the employer's objections to the Southampton election were still pending before the Board, the arbitrator, on March 7, 1983, rejected the employer's contention that the Medical Packaging Division employees were not a part of Local 169's unit. At the

same time, however, he decided that the Local 169 collective bargaining agreement did not cover those employees and that a separate Medical Packaging Division seniority system should be maintained. The company chose to comply with the award by bargaining with Local 169.

## II.

### Board Proceedings

Faced with the employer's refusal to bargain despite its certification and with the employer's recognition of Local 169, Local 14 filed unfair labor practice charges against both the employer and Local 169. Rejecting the contentions of the employer and Local 169 that the Board should defer to the arbitrator's award, an administrative law judge held a hearing and found that the employer had violated sections 8(a)(1), (2), and (5) of the Act, 29 U.S.C. § 158(a)(1), (2), (5) (1982), by recognizing Local 169 and refusing to recognize and bargain with Local 14. Local 169 was found to have violated section 8(b)(1)(A) of the Act, 29 U.S.C. § 158(b)(1)(A) (1982), by demanding recognition as bargaining representative of the Medical Packaging Division employees. The Board affirmed and now seeks enforcement of its order.

## III.

### The Respondents' Contentions

Both the employer and Local 169 contend that the Board erred in refusing to defer to the decision of the arbitrator. Both also contend that the Board erred in concluding that the Medical Packaging Division is an appropriate bargaining unit within the Philadelphia plant.

#### A. Deferral

In *Chas. S. Winner, Inc. v. Teamsters Local Union No. 115*, 777 F.2d 861 (3d Cir.1985), this court affirmed a summary judgment declaring that an employer is not bound to arbitrate a successorship issue because successorship is a representation issue and not subject to resolution by contract. In that opinion we pointed out

that under section 9 of the National Labor Relations Act, 29 U.S.C. § 159 (1982), representation issues are matters relegated to the Board. *Winner*, 777 F.2d at 863. Representation issues may not be decided by contract, and thus may not be decided by an arbitrator. *Id.* The *Winner* case controls with respect to the contention that the Board should have deferred to the decision of the arbitrator. Like successorship, accretion is a representation issue. It cannot be resolved by a contract between Local 169 and the employer and thus cannot be resolved by the contractual remedy of arbitration.

Our holding that accretion, like successorship, is not a matter that can be resolved by contract arbitration is consistent with the position of the Board that it will not defer to arbitration on representation issues. *See, e.g., Martin Marietta Chemicals*, 270 N.L.R.B. 821, 822 n. 4 (1984); *Olin Corp.*, 268 N.L.R.B. 573, 574 (1984); *Marion Power Shovel Co.*, 230 N.L.R.B. 576, 577–78 (1977); *Hershey Foods Corp.*, 208 N.L.R.B. 452, 457 (1974), *enforced mem.*, 506 F.2d 1052 (3d Cir.1974); *Combustion Engineering, Inc.*, 195 N.L.R.B. 909, 910–11 (1972); *Wolwick, Inc.*, 185 N.L.R.B. 783, 784 (1970).

### B. Unit Determination

■ Because the Board properly refused to defer to a decision that the arbitrator had no legal authority to make, we turn to the merits of the respondents' objections to the Board's decision and order.

As noted in Part I, the Regional Director, over the employer's objection, conducted an election for the Medical Packaging Division unit on July 8, 1982. In that election a majority of the unit employees chose Local 14 as the unit's bargaining representative. Formal certification of Local 14 was made on February 8, 1983. For one year after the date of a Board certification a certified bargaining representative enjoys an irrebuttable presumption of continuing support from a majority of the employees in the bargaining unit. *See Brooks v. NLRB*, 348 U.S. 96, 102–04, 75 S.Ct. 176, 180–82, 99 L.Ed. 125 (1954); *NLRB v. J.W. Rex Co.*,

243 F.2d 356, 360–61 (3d Cir.1957). While "[a] valid certification is, of course, not intended to be a permanent relationship ... an employer cannot rely on the changes to justify his refusal to bargain when those changes occur within the certification year...." *J.W. Rex Co.*, 243 F.2d at 360. The Board's one-year-after-certification rule, approved by the Supreme Court in *Brooks*, is consistent with the policy of encouraging stability in collective bargaining relationships. Any other rule would permit employers to delay a final certification by filing objections to an election, while at the same time taking self-help steps such as moving the physical location of the bargaining unit in hopes of destroying a union's majority status.

In this case the employer argues that the relocation of the Medical Packaging Division to Philadelphia was a changed circumstance and certification should not have been granted. The *Brooks* rule is sufficient to foreclose consideration of this contention. Even if this rule were not applicable, however, the result would be no different because the Board's bargaining unit determination is supported by substantial evidence. The factors relevant to the determination of an appropriate bargaining unit include (1) integration of operations, (2) centralization of managerial and administrative control, (3) geographic proximity, (4) similarity of working conditions, skill, and functions, (5) common control over labor relations, (6) collective bargaining history, and (7) interchangeability of employees. *NLRB v. Security-Columbian Banknote Co.*, 541 F.2d 135, 140 (3d Cir.1976). In this instance both before and after the move to Philadelphia the operations of the Medical Packaging Division were separate, with interior walls built to maintain separation. Only the upper echelons of management were consolidated. Almost all job classifications remained intact. Working conditions, skills, and functions were, with the possible exception of two maintenance employees, separate and distinct. The Medical Packaging Division employees had selected a different bargaining representa-

tive and, with the possible exception of two maintenance employees, there was no interchange of employees. The Board's conclusion that the Medical Packaging Division remained an appropriate bargaining unit after the move, therefore, is amply supported by the record.

The employer and Local 169 rely heavily on the fact that the Philadelphia plant has an integrated maintenance workforce. That isolated fact, which resulted from the employer's unilateral decision to move the Medical Packaging Division from Southampton, does not as a matter of law compel the conclusion that an accretion to the Philadelphia plant-wide unit has occurred. Neither the Medical Packaging Division nor the Paper Products Division has separate maintenance employee units. Unit clarification proceedings are available to determine to which unit the two maintenance employees transferred from Southampton should be assigned.

The employer and Local 169 also rely on the fact that following the election the number of employees in the Medical Packaging Division increased and on the employer's acquisition in January of 1983 of additional medical packaging equipment. These facts have no relevancy to the issue of accretion. The new employees were integrated into the Medical Packaging Division, and the new equipment was used by that division.

### Conclusion

The Board did not err in refusing to defer to the arbitrator's decision. In addition the Board did not err in concluding that the Medical Packaging Division remained an appropriate bargaining unit following the move of that division from Southampton to Philadelphia. The Board's certification of Local 14 as the bargaining representative for employees in that division required that the employer bargain with Local 14 as the employees' representative and that Local 169 refrain from efforts to bargain for them. Thus the Board's order will be enforced in all respects.