**COMMUNICATION WORKERS OF AMERICA, AFL–CIO, etc.,**
Plaintiffs–Appellees,

v.

**US WEST DIRECT,**
Defendant–Appellant.

No. 86–1685.

United States Court of Appeals,
Tenth Circuit.

June 7, 1988.

James J. Gonzales, Denver, Colo. (John M. Husband, and Holland & Hart, on the brief), for appellant.

Gerard C. Boyle, Denver, Colo. (Hornbein, MacDonald and Fattor, on the brief), for appellees.

Before ANDERSON, BALDOCK, and TIMBERS,* Circuit Judges.

TIMBERS, Circuit Judge.

US West Direct ("US West") appeals from a summary judgment entered April 24, 1986 in the District of Colorado, Sherman G. Finesilver, *Chief Judge,* holding that US West was compelled to arbitrate, pursuant to an arbitration clause in the collective bargaining agreement, a union grievance asserting failure to recognize certain groups of employees as covered under the agreement.

---

* Of the Second Circuit, by designation.

On appeal, US West claims that the union grievance raises a question of representation which should be decided by the National Labor Relations Board (the "NLRB" or the "Board"). We disagree.

We find the union grievance to be limited to those employees performing accounting functions. We hold that the dispute on its face as to those employees is governed by the contract, since the arbitrator first would have to determine whether the group of employees in question fell within the definition of "employees" in the agreement. In view of the strong federal policy favoring arbitration, the fact that representational matters are touched upon does not preempt the right to arbitrate under the agreement.

We affirm.

### I.

We shall summarize only those facts believed necessary to an understanding of the issues raised on appeal.

Appellee Communication Workers of America, AFL–CIO ("CWA") is the union representative of certain employees of appellant US West. Prior to January 1, 1984, CWA represented all of the directory clerical employees of the Yellow Pages Department of Mountain States Telephone & Telegraph Co. ("Mountain Bell"), part of American Telephone and Telegraph Co. ("AT & T"), as a result of two certification elections held in 1974 and 1982.

After these elections, those employees were included in the company-wide bargaining unit and were covered by the same agreement as the represented employees who performed accounting functions for the Yellow Pages Department. Some employee groups specifically were excluded from representation.

Since AT & T was required to divest, CWA and AT & T executed a pre-divestiture agreement. The Amended Memorandum of Agreement dated March 26, 1982, as supplemented August 21, 1983, was "intended to set forth the rights and obligations of employees in the Bell System who are presently represented by CWA and who are transferred as a part of their work group or organization in connection with any corporate reorganization of the Bell System...."

"Employees" covered by the agreement are defined in Article 1, section 1.1, of the agreement which provides in relevant part:

"Employees, for purposes of this ... [agreement] shall include those whose titles are included on the list of job title classifications in the geographical locations contained in Appendix A ... who were within the units represented by the Union at the time of entry into the within agreement or who thereafter hold such job title classifications in such geographic locations within the represented unit."

The arbitration clause, Article 6, section 6.2, of the agreement, provides in relevant part:

"Grievances subject to the provisions of this Article 6 shall be limited to the following:

(a) Grievances arising out of or resulting from the application or interpretation of the provisions of this Agreement."

After the divestiture of AT & T on January 1, 1984, the US West subsidiary was formed which took over producing the yellow page directories. Some represented employees of Mountain Bell were transferred to US West. Initially US West continued to have its accounting functions performed by represented employees of Mountain Bell. At some point, however, US West decided to perform its own accounting functions and hired its own employees. US West treated these employees as nonunionized.

According to CWA, although those employees were placed in work groups and job title classifications covered by the collective bargaining agreement, US West refused to apply the bargaining agreement to them. US West asserts that those employees previously did not exist within the Yellow Pages Department and are not functional groups included in CWA's existing NLRB unit certifications.

On April 22, 1985, CWA filed a grievance asserting that US West failed to recognize all non-management employees in job titles covered by the collective bargaining agreement. US West also did not apply the agreement to employees involved in national yellow page sales, financial planning, certain payroll clerks, promotions, sales results, delivery, information center, planning and marketing, and corporate staff. US West asserts that historically the parties have excluded these groups from unit representation elections and from the CWA bargaining unit. At oral argument CWA conceded that the agreement did not cover the yellow page sales group which it had failed to represent after the 1982 certification election. CWA asserted that it did not intend to include this group in the grievance. CWA did not rebut or even discuss the other groups US West claimed historically were excluded from representation. Indeed, CWA limited the factual description in its brief to a discussion of those employees performing accounting functions. Therefore, despite the broad language CWA used in its initial grievance—failure to recognize all non-management employees—we hold that the instant dispute is limited to those employees performing accounting functions. *See infra* note 2.

On May 20, 1985, the grievance was processed in accordance with the procedure established by the agreement. US West claimed that the dispute involved a recognitional question and that the NLRB—not an arbitrator—was the proper forum before which to resolve the dispute. After US West denied CWA's request to submit the grievance to arbitration, CWA commenced the instant action on August 26, 1985 pursuant to § 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a) (1982), to compel arbitration of the dispute pursuant to the arbitration clause of the agreement.

Both parties moved for summary judgment. US West raised the same claims it asserted in opposing the grievance procedure—that the dispute in essence was concerned with recognition of a group of employees which was an issue for the NLRB

to decide. In a judgment entered April 24, 1986, the court granted CWA's motion for summary judgment to compel arbitration, based on the strong federal policy favoring arbitration and on the limited scope of judicial review which bars consideration of the merits of the dispute. From that judgment, US West has taken the instant appeal.

## II.

The essential issue before us is whether the district court correctly held that US West must arbitrate the union grievance. We affirm.

While it did not address a disputed issue analogous to that in the instant case, the Supreme Court, in *AT & T Tech., Inc. v. Communication Workers*, 475 U.S. 643 (1986), reaffirmed the principles that were established a quarter of a century earlier in the *Steelworkers Trilogy*. *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *United Steelworkers of Am. v. American Mfg. Co.*, 363 U.S. 564 (1960).

Although the question of whether a collective bargaining agreement imposes on the parties a duty to arbitrate a particular grievance is "undeniably an issue for judicial determination" unless the parties expressly provide otherwise, *AT & T, supra,* 475 U.S. 649, a court "is not to rule on the potential merits of the underlying claim[ ]" "even if ... [the claim] appears to the court to be frivolous". *Id.* at 649–50. Where a contract contains an arbitration clause, there is a *"presumption* of arbitrability"* in the sense that " '[a]n order to arbitrate the particular grievance should not be denied unless it may be said *with positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " *Id.* at 650 (quoting *Warrior & Gulf, supra,* 363 U.S. at 582–83) (emphasis added). This favored presumption of arbitrability arises from the policies which are

the underpinning of federal labor law. *Id.; Local 1445, United Food v. Stop & Shop Companies,* 776 F.2d 19, 21 (1st Cir.1985).

US West asserts that this presumption has been rebutted in the instant case since the disputed grievance—as to whether US West failed to "recognize" certain employees—is a representational rather than a contractual dispute. US West asserts that this question is within the exclusive jurisdiction of the NLRB. According to US West, placing those employees in the bargaining unit would result in an unlawful accretion in violation of the right of those employees to select their own bargaining representative.

In applying the principles established by the Supreme Court, we are guided by a recent decision of our Court directly in point. *International Union, U.A.W. v. Telex Computer Prods.,* 816 F.2d 519 (10th Cir.1987). Based on *Telex,* we conclude here that the district court correctly held that the collective bargaining agreement imposed on the parties a duty to arbitrate the union grievance, limited to those employees performing accounting functions.

We held in *Telex* that "arbitration may not be compelled if the proceeding itself is unlawful, if a contract clause on its face violates federal labor law or national policy, or if no lawful award could be made by an arbitrator under any conceivable interpretation of the contract." *Id.* at 525. The line between a representational issue and a contractual issue often is blurred. As we held in *Telex:*

> "[m]atters touching on union representation, in the context presented here, are within the *concurrent,* not exclusive jurisdiction of the NLRB. If an agreement allows arbitration of contractual disputes that may affect representational issues, the concurrent jurisdiction of the NLRB will not deprive the parties of their bargain."

*Id.* (emphasis added) (citing *Carey v. Westinghouse,* 375 U.S. 261, 268, 272 (1964)); *International Union v. E–Systems, Inc.,* 632 F.2d 487, 490 (5th Cir. Unit A 1980), *cert. denied,* 451 U.S. 910 (1981)). *See also Concourse Village v. Local 32E,* 822 F.2d

302, 305 (2d Cir.1987); *International Ass'n of Machinists & Aerospace Workers, Local 2201 v. International Air Serv. of Puerto Rico, Inc.,* 636 F.2d 848 (1st Cir. 1980). As the First Circuit explained:

> "the question of whether or not the employees in question came within the definition of the bargaining unit went to the merits of the union's claim and thus was for the arbitrator to decide. While it is possible to construe the relief sought as calling for a determination of the scope of the bargaining unit represented, a task committed exclusively to the Board, labor policy supplies a preference for interpreting questions as arbitrable in such a situation."

*Id.* at 849.

US West primarily focuses the remainder of its argument on the other legal remedies before the NLRB available to CWA. The Supreme Court has rejected this line of argument. In *Carey, supra,* two unions were disputing which was the appropriate bargaining representative for a certain group of employees. The Court held that the district court had jurisdiction under § 301 to compel arbitration in accordance with the collective bargaining agreement, and in dicta stated:

> "If this is truly a representation case, either ... [the union] or ... [the company] can move to have the certificate clarified [from the NLRB]. But the existence of a remedy before the Board for an unfair labor practice does not bar individual employees from seeking damages for breach of a collective bargaining agreement in a state court.... We think the same policy considerations are applicable here; and that a suit either in the federal courts, as provided by § 301(a) ..., or before such state tribunals as are authorized to act is proper, *even though an alternative remedy before the Board is available,* which, if invoked by the employer, will protect him."

*Carey, supra,* 375 U.S. at 268 (emphasis added) (citations omitted).

As we held in *Telex:*

> " [E]ach of these issues, before it rises to a statutory level, presents questions

of fact and contractual interpretation. Since the Board will not defer to an arbitrator's decision which is repugnant to the Act, no prejudice will result for allowing an arbitrator to clear up the factual and contractual underbrush and, perhaps, remove any need to consider the statute.' "

816 F.2d at 526 (quoting *International Air Serv. of Puerto Rico, supra,* 636 F.2d at 849–50).

US West relies on several NLRB cases to support its claim that the NLRB has exclusive jurisdiction over this dispute. *E.g., Hershey Foods Corp.,* 208 NLRB 452 (1974); *Combustion Eng'g, Inc.,* 195 NLRB 909 (1972). We are as unpersuaded now as we were in *Telex* where the employer relied on the same NLRB cases. These NLRB cases hold that the Board will not defer to an arbitrator's decision on representational issues. As we held in *Telex,* however, "[n]one of the cases cited ..., stand for the proposition that the dispute cannot be considered by an arbitrator in the first instance. In ... [the] NLRB cases cited ... in support of this argument, an arbitrator had already issued a ruling in the case." *Telex, supra,* 816 F.2d at 526 n. 5. Indeed, as we indicated in *Telex,* the NLRB itself has acknowledged the duality of the issues, with the arbitrator to decide whether a collective bargaining agreement should be extended to a new operation and the Board to decide whether the new employees might properly be treated as an accretion to the existing unit. *Id.* at 526 (citing *Combustion Eng'g, Inc., supra,* 195 NLRB at 910).[1]

US West further argues that an arbitrator could not find the disputed employees were accreted by merger. This argument is irrelevant to our inquiry. As stated above, the Supreme Court's directive could not have been clearer—it is not for the court to rule on the potential merits even if the case appears frivolous. *AT & T, supra,* 475 U.S. at 649–50; *Telex, supra,* 816 F.2d at 526. We therefore make no determination as to whether the employees in question fall within the bargaining unit.

Since the arbitrator necessarily first would have to determine if the disputed employees fell within the scope of the agreement, one cannot say "with positive assurance" that the dispute is not covered by the arbitration clause. *AT & T, supra,* 475 U.S. at 650; *Concourse Village v. Local 32E, supra,* 822 F.2d at 305. Moreover, " '[d]oubts should be resolved in favor of' " arbitration. *AT & T, supra,* 475 U.S. at 650 (quoting *Warrior & Gulf, supra,* 363 U.S. at 582–83). Of course, if the arbitrator subsequently finds in favor of the union and US West believes the result is an illegal extension of the represented unit, it is free to petition the NLRB for clarification of the certificate. *See Carey, supra,* 375 U.S. at 268. And, as US West

---

1. In *Trustees of Iron Workers Fund v. A & P Steel,* 812 F.2d 1518, 1525–27 (10th Cir.1987), we observed that *South Prairie Constr. Co. v. Operating Eng'rs,* 425 U.S. 800 (1976) (per curiam) —a case decided by the Supreme Court after *Carey, supra*—appears to have narrowed the scope of *Carey.* In *South Prairie,* the Supreme Court held that, on appeal of an NLRB decision, a federal court lacked jurisdiction and must remand to the NLRB to make an initial determination of the appropriate bargaining unit. As we held in *A & P Steel,* however, "[c]rucial to the outcome in *South Prairie,* in our view, was the fact that the NLRB had already assumed initial jurisdiction in the dispute, yet had not made a ruling on the relevant bargaining unit." *Id.* at 1525. We also pointed out that *South Prairie* was *not* an action to enforce a collective bargaining agreement under § 301. We concluded that *South Prairie* need not apply in a § 301 action provided there is no prior or pending invocation of NLRB jurisdiction. *Id.* at

1526–27. We further held that "the representational issue before us attaches to a genuine section 301 contract dispute as a collateral issue and that the case is not 'so "primarily representational" as to preclude section 301 jurisdiction.' " *Id.* at 1526 (quoting *United Bhd. of Carpenters & Joiners of Am. v. W.T. Galliher Bros., Inc.,* 787 F.2d 953, 954 (4th Cir.1986)). *But see Northwest Adm'r Inc. v. Con Iverson,* 749 F.2d 1338 (9th Cir.1984); *Local Union 204 of Int'l Bhd. of Elec. Workers v. Iowa Elec. Light & Power Co.,* 668 F.2d 413 (8th Cir.1982).

We conclude that in the instant case, as in *A & P Steel,* the representational issue is collateral to the contract dispute. We note, moreover, that *A & P Steel* did *not* involve the jurisdiction of an arbitrator but that of a federal court. In the instant case, as in *Carey,* the disputed issue is the jurisdiction of an arbitrator pursuant to a broad arbitration clause in the collective bargaining agreement. Accordingly, the presumptions in favor of arbitrability come into play.

itself pointed out, the Board will not be bound by the arbitrator's determination.[2]

### III.

To summarize:

We affirm the district court's grant of summary judgment in favor of CWA.

We order that the mandate issue forthwith.

AFFIRMED.

---

**2.** We wish to make clear, however, that we would have a different case if the union had attempted but failed to organize a group of workers within the employer company, and then invoked the arbitration clause in the existing contract covering other workers in a veiled attempt to have the arbitrator classify the group of workers in question as "employees" under the agreement. For instance, we would reject an attempt by CWA to present before an arbitrator whether the yellow page sales group was covered. Indeed, CWA agreed at oral argument that its attempt to represent this group in the 1982 certification election had failed and that the grievance does not cover this group. We also note that there is nothing in the record to rebut US West's assertion that certain other employee groups falling under the heading of nonmanagement employees historically have been excluded from the CWA bargaining unit. Accordingly, we also would reject a claim of arbitration coverage as to these employees.

In other words, an arbitration clause cannot be used as a subterfuge to circumvent obvious representation election situations and the controlling role of the NLRB in such matters. *See Telex, supra,* 816 F.2d at 525; *International U. of Oper. Eng'rs, Local 279 v. Sid Richardson C. Co.,* 471 F.2d 1175, 1177–78 (5th Cir.1973). Despite our limited scope of inquiry when arbitration of a grievance is at issue, such situations do not fall within an agreement to arbitrate *contractual* disputes.