**OLESON'S FOOD STORES, Plaintiff,**

v.

**LOCAL 876 UNITED FOOD & COMMERCIAL WORKERS, Defendant.**

**Civ. No. 1:91–CV–456.**

United States District Court,
W.D. Michigan.

June 25, 1991.

Craig A. Mutch, Michael A. Snapper, Miller, Johnson, Snell & Cummiskey, Grand Rapids, Mich., for plaintiff.

Andrew A. Nickelhoff, Mary Ellen Gurewitz, Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, Detroit, Mich., for defendant.

## OPINION

ENSLEN, District Judge.

This matter is before the Court on plaintiff Oleson's Food Stores ("Oleson's") complaint requesting that a preliminary injunction be entered staying arbitration of the underlying grievance in this matter scheduled for June 26, 1991.

## FACTS

Plaintiff Oleson's is a grocery retailer with stores in Petoskey, Traverse City, Charlevoix, Cadillac and Manistee, Michigan. Oleson's employees are represented by United Food and Commercial Workers ("UFCW") Local 876, or by UFCW, Local 11 which merged with Local 876 (collectively "Local 876"). The collective bargaining

---

agreement in effect between the parties contains the following language in Article 2:

The Employer recognizes the Union as the sole and exclusive bargaining agent of all employees of the Employer, including employees of lessees, licensees and concessionaires, including those classifications of employees covered by this Agreement and of any new classifications hereafter established in stores now or hereafter owned and/or operated by the Employer in the counties of Wayne, Monroe, Lenawee, Washtenaw, Livingston, Oakland, Macomb, St. Clair, Shiawassee, Genesee, Lapeer, Sanilac, Huron, Tuscola, Saginaw, Midland, Bay, Mason, Lake, Osceola, Clare, Gladwin, Arenac, Manistee, Wexfore, Missaukee, Roscommon, Ogemaw, Iosco, Benzie, Grand Traverse, Kalkaska, Crawford, Oscoda, Alcana, Leelanau, Antrim, Otsego, Montmorency, Alpena, Charlevoix, Emmet, Cheybogan, Presque Isle, Luce, Chippewa, and Mackinac, Michigan.

The collective bargaining agreement also contains, in Article 5, a grievance or dispute procedure. Article 5, Section B provides:

Should any difference, disputes, or complaints arise over the interpretation or application of this Agreement, there shall be an earnest effort on the part of the parties to settle such promptly through the following steps:

Step 4.

If the grievance is not satisfactorily adjusted in step 3, either party may, with reasonable promptness, in writing, request arbitration, and the other party shall be obliged to proceed with arbitration in the manner hereinafter provided.

Article 5, Section C provides, in relevant part, that:

The arbitrator shall have authority and jurisdiction to determine the propriety of the interpretation and/or application of the Agreement respecting the grievance in question. . . .

In early 1991, Oleson's formed a wholly-owned subsidiary corporation called MBD, Inc. MBD, Inc. owns and operates a grocery store in Petoskey operating under the name Buy–Low. Plaintiff asserts that although Oleson's owns all of the stock in MBD, Inc., the Buy–Low operation is operated as a distinct and separate entity from Oleson's with different directors, officers, managerial staff and employee policies as well as no interchange of employees. Buy–Low has also opened stores in Cadillac and Charlevoix, in each instance within a short distance of an existing Oleson's store.

In January 1991, Local 876 requested that Oleson's recognize it as the collective bargaining representative of the employees in the Buy–Low stores. Oleson's declined to recognize Local 876 claiming that "it did not own or operate the Buy–Low stores and that there had been no showing of interest from the Buy–Low employees in being represented by Local 876." Brief at 2.

In April, Local 876 filed grievances claiming that Oleson's was violating the collective bargaining agreement by refusing to recognize it as the bargaining agent for the Buy–Low employees. The grievances were not settled and the Union requested arbitration in accordance with the provisions of Article 5. An arbitration hearing has been scheduled for June 26, 1991. Oleson's filed the instant motion, seeking to have the arbitration enjoined, maintaining that the grievances are not arbitrable under the contract because they raise issues of the union's representation which is solely within the jurisdiction of the National Labor Relations Board ("NLRB").

## STANDARD

### Preliminary Injunction Standard

In deciding whether to grant or deny a preliminary injunction, the Court must balance four well-known factors. These factors are:

1. Whether the plaintiff has shown a strong or substantial likelihood of success on the merits;

2. Whether the plaintiff has shown irreparable injury;

3. Whether the issuance of a preliminary injunction would cause substantial harm to others; and

4. Whether the public interest would be served by issuing a preliminary injunction.

*Forry, Inc. v. Neundorfer, Inc.*, 837 F.2d 259, 262 (6th Cir.1988); *Mason County Medical Association v. Knebel*, 563 F.2d 256, 261 (6th Cir.1977).

 The purpose of the preliminary injunction is to preserve the status quo pending final determination of the lawsuit. *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981). Preliminary injunctions are addressed to the discretion of the district court. *Synanon Foundation, Inc. v. California*, 444 U.S. 1307, 100 S.Ct. 496, 62 L.Ed.2d 454 (1979). This type of relief is an extraordinary remedy best used sparingly. *Roghan v. Block*, 590 F.Supp. 150 (W.D.Mich.1984).

 The Sixth Circuit has cautioned courts that they should not view the four factors as prerequisites to relief, but rather as factors to be balanced. *In re DeLorean Motor Co.*, 755 F.2d 1223 (6th Cir.1985). Thus, a court can enter a preliminary injunction if it finds that the plaintiff "at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued." *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982). "Where the burden of the injunction would weigh as heavily on the defendant as on the plaintiff[, however], the plaintiff must make a showing of at least a 'strong probability of success on the merits' before a trial court would be justified in issuing the order." *Frisch's Restaurant, Inc. v. Shoney's, Inc.*. 759 F.2d 1261, 1270 (6th Cir.1985). Also, as the strength of showing as to irreparable harm increases, the necessity to show likelihood of success on the merits decreases. *Ardister v. Mansour*, 627 F.Supp. 641, 644 (W.D.Mich.

1986). Yet in spite of the overall flexibility of the test for preliminary injunctive relief, the Sixth Circuit has stated that irreparable harm element is to be analyzed carefully. In *Friendship Materials, Inc. v. Michigan Brick, Inc.*, the court said:

Despite the overall flexibility of the test for preliminary injunctive relief, and the discretion vested in the district court, equity has traditionally required [a showing of] irreparable harm before an interlocutory injunction may be issued.

679 F.2d 100, 103 (6th Cir.1982).

## DISCUSSION

In *AT & T Technologies v. Communications Workers of America*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), the Supreme Court addressed the question of whether an arbitrator or the Court determines whether the underlying grievance should be arbitrated. In *AT & T*, the union filed a grievance challenging AT & T's decision to lay off certain employees. AT & T refused to submit the grievance to arbitration. The district court ordered arbitration of the threshold question of arbitrability. The Court of Appeals for the Seventh Circuit also ordered AT & T to arbitrate the arbitrability issue. The Supreme Court vacated the Seventh Circuit's decision, holding that "the question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.* at 649, 106 S.Ct. at 1422. (cites omitted).

In reaching its decision, the Court relied on four principles it had previously established in a series of cases known as the *Steelworkers Trilogy*.[1] The first principle is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he or she has

---

1. *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; and *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424.

not agreed so to submit." *AT & T*, 475 U.S. at 648, 106 S.Ct. at 1418. The second principle, as stated above, is that arbitrability is an issue for the courts, and not the arbitrator. Third, in deciding whether the parties have agreed to submit a particular grievance to arbitration, the court is not to rule on the potential merits of the underlying claims. *Id.* Lastly, an order to arbitrate should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Id.*

■ The Sixth Circuit has adopted and applied the *AT & T* principles. In *Industrial Workers v. Kroger*, 900 F.2d 944, 947 (6th Cir.1990), the court held that substantive questions of whether an arbitrable grievance has been filed are for the courts to decide. In *Local Union 89 v. Moog Louisville Warehouse*, 852 F.2d 871 (6th Cir.1988), the employer Moog discharged a member of the union. The union filed a grievance over the discharge and pursued it through the grievance steps to the final stage of arbitration. Moog refused the demand for arbitration, contending that the request was untimely. The district court held that the timeliness of the filing of an arbitration request was a procedural question to be determined by the arbitrator and granted summary judgment in favor of the union. The Sixth Circuit disagreed and reversed, holding that the district should decide whether a contract creates a duty to arbitrate a particular grievance. *Id.* at 875. Accordingly, it is clear that the question of arbitrability of the dispute in this matter is a question this Court must decide, and the next step in deciding the plaintiff's motion for a preliminary injunction is to determine from the arbitration provisions of the contract whether the Union's grievance is arbitrable.

■ Oleson's contends that representation questions, such as the underlying question in this matter, are not arbitrable. In support of its assertion it relies on a Third Circuit case, *Chas. S. Winner, Inc. v. Teamsters Local Union*, 777 F.2d 861 (3rd Cir.1985), and on two district court cases

arising in the Third Circuit. In *Winner*, the union representing the employer's employees chose to affiliate with another local (Local 115). When Local 115 demanded recognition from the employer, the employer refused. A grievance was filed and pursued to arbitration. The employer sought a declaratory judgment that Local 115 was not a party to the collective bargaining agreement and an injunction preventing the arbitration. The court held that the matter of successorship was not a contract issue and could not be decided by an arbitrator.

It seems that the law of the Third Circuit is that representational issues should not be arbitrated, but fall within the exclusive jurisdiction of the National Labor Relations Board. *See e.g., N.L.R.B. v. Paper Manufacturers, Co.*, 786 F.2d 163 (3rd Cir.1986); *Edgewood Village Markets v. Local 56*, 126 LRRM 3356, 1987 WL 6888 *International Brotherhood of Electrical Workers v. Champion Parts Rebuilders, Inc.*, No. 88–1621, 1989 U.S.Dist. LEXIS 3673 (M.D.Pa.1989).

Defendant argues and I agree, however, that this line of authority is a clear departure from other circuits, which have held that representation is appropriately arbitrated. In *Carey v. Westinghouse*, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964), the Supreme Court held that although a dispute involved a representational issue, it could be the subject of arbitration. The Court suggested that although a dispute may ultimately come before the Board, prior "resort to arbitration may have a pervasive, curative effect" and will encourage "those conciliatory measures which Congress deemed vital to 'industrial peace' and which may be dispositive of the entire dispute." *Bell Cold Storage, Inc. v. Local 544*, 885 F.2d 436, 440 (8th Cir.1989) quoting *Carey*, 375 U.S. at 272, 84 S.Ct. at 409. The Court also noted that if the Board subsequently disagreed with the arbitrator's decision, "the Board's ruling would, of course, take precedence" and that the superiority of the Board could be invoked at any time. "Meanwhile," the Court noted, "the therapy of arbitration is

brought to bear in a complicated and troubled area." *Carey,* 375 U.S. at 272, 84 S.Ct. at 409. Several Circuits have allowed arbitration of representational questions, following *Carey. See e.g., Bell Cold Storage,* 885 F.2d 436 (8th Cir.1989); *Communication Workers of America v. U.S. West Direct,* 847 F.2d 1475, 1478 (10th Cir.1988); *International Union, UAW v. Telex Computer Products, Inc.,* 816 F.2d 519 (10th Cir.1987); *Local 703, International Brotherhood of Teamsters v. Kennicott Bros. Company,* 725 F.2d 1088 (7th Cir.1984); *Retail Clerks Local 588 v. NLRB,* 565 F.2d 769 (5th Cir.1977); *Haig Berberian, Inc. v. Cannery Warehousemen,* 535 F.2d 496, 499 (9th Cir.1976).

An integral factor in many of the decisions to allow arbitration has been the presence of a collective bargaining agreement providing for arbitration, similar to the one signed by the parties in this case. *See e.g., U.S. v. Ehret,* 885 F.2d 441 (8th Cir.1989). Based on my interpretation of *Carey* and its progeny, I am unpersuaded that plaintiff has shown any likelihood of success on the merits of its request. To the extent that Third Circuit case law indicates otherwise, I find it unpersuasive. Plaintiff has failed to discuss facts relating to irreparable injury, substantial harm to others or public interest. Plaintiff has failed to make the requisite showing to warrant an injunction. Accordingly, I will issue an order denying plaintiff's request.