NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

CAM INDUSTRIES, INC., Respondent,

Millmen-Industrial Carpenters, Local
262, Intervenor.

No. 81–7184.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 9, 1981.

Decided Jan. 25, 1982.

Corinna Metcalf, N.L.R.B., Washington, D. C., argued, for petitioner; Corinna Metcalf, Allison W. Brown, Jr., N.L.R.B., Washington, D. C., on brief.

---

* The Honorable James M. Burns, Chief District Judge for the District of Oregon, sitting by designation.

1. While the content of the authorization card is not at issue here, the text is presented for fuller understanding.

AUTHORIZATION CARD
I hereby authorize the UNITED BROTHER-HOOD OF CARPENTERS AND JOINERS OF

Frederick A. Morgan, Bronson, Bronson & McKinnon, San Francisco, Cal., for respondent.

David Rosenfeld, Van Bourg, Allen, Weinberg & Roger, San Francisco, Cal., for intervenor.

Before POOLE and REINHARDT, Circuit Judges, and BURNS,* District Judge.

REINHARDT, Circuit Judge.

The National Labor Relations Board applies for enforcement of its order requiring respondent, CAM Industries, to bargain with Millmen-Industrial Carpenters, Local 262. We enforce the order.

Respondent distributes aluminum windows, patio, shower and aluminum mirrored doors, and manufactures custom windows. As a result of a union organization drive conducted at CAM's Santa Clara plant, a majority of the warehousemen and production and delivery employees signed union authorization cards which authorized the United Brotherhood of Carpenters and Joiners of America [International] to act as collective bargaining agent.[1] The business representative for Millmen-Industrial Carpenters, Local 262 [Local], Franco, assisted CAM's employees in the organizational effort. Franco also serves as a representative for the Santa Clara Valley District Council of Carpenters [District Council].

Both the Local and the District Council are affiliated with the International. It is the International's task to charter Local Unions. The District Council is the union's regional governing body and is comprised

AMERICA to act as my collective bargaining agent in dealing with my Employer in regard to wages, hours and other conditions of employment and in proceedings before the NLRB and other governmental agencies. All previous authorizations made by me are revoked.

exclusively of delegates from Local Unions. Membership in an affiliated Local Union is a prerequisite to membership on the District Council and in the International. The evidence presented before the Administrative Law Judge [ALJ] shows that the Local was the only entity which could appropriately represent respondent's warehousemen and production and delivery employees for purposes of collective bargaining with the employer.

On the basis of the authorization card majority, Franco notified CAM that the District Council "represents" a majority of respondent's employees. The letter requested recognition of the Local as the employees' collective bargaining agent and offered a third party check if respondent questioned the validity of the card majority. CAM requested a third party check. CAM's representative and Franco, acting for the Local, entered into a Cross-Check Election Agreement which provided that both the Local and CAM would be bound by the results of the cross-check; the agreement provided that CAM would agree to bargain with the Local if the cross-check confirmed the majority.[2]

The cross-check verified that a majority of employees in the bargaining unit had executed authorization cards. Nevertheless, despite its agreement with the Local, respondent refused to bargain with the union and filed a petition with the NLRB requesting an election.

The ALJ concluded that because the authorization cards contained the name of the International and not that of the Local, the employer was not obligated to bargain with the Local; the NLRB reversed the ALJ, concluding that respondent had violated Sections 8(a)(1) and (5) of the Labor Management Relations Act [the Act] (29 U.S.C. § 158(a)(1) and (5) (1976)).

The issue in this case is whether authorization cards naming only an International can serve to authorize an affiliated Local to act as the collective bargaining representative. The NLRB contends that, in the absence of proof that the employees did not wish to be represented by the Local, an affiliate may serve as the bargaining agent when the authorization cards designate a parent labor organization.

A long line of NLRB cases supports treating authorization cards containing the name of the International Union as an authorization of the appropriate affiliated local for purposes of collective bargaining. *Local 707, Highway & Local Motor Freight Drivers*, 196 N.L.R.B. 613 (1972); *Thurston Motor Lines, Inc.*, 159 N.L.R.B. 1265, 1270 n.16 (1966); *A & D Trucking Co.*, 137 N.L.R.B. 915, 921 (1962); *Dolores, Inc.*, 98 N.L.R.B. 550, 554 (1952); *Cummer-Graham Co.*, 90 N.L.R.B. 722, 725 n.8 (1950); *Weaver Wintark*, 87 N.L.R.B. 351, 363 (1949); *Nubone Co.*, 62 N.L.R.B. 322, 326 n.9 (1945), *enforced per curiam*, 155 F.2d 523 (3d Cir. 1946); *Franks Bros. Co.*, 44 N.L.R.B. 898 (1942), *enforced*, 137 F.2d 989 (1st Cir. 1943), *aff'd*, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 435 (1944); *A. Sartorius & Co.*, 40 N.L.R.B. 107, 120 (1942), *enforced*, 140 F.2d 203 (2d Cir. 1944). *See also NLRB v. Bradford Dyeing Association*, 310 U.S. 318, 339, 60 S.Ct. 918, 929, 84 L.Ed. 1226 (1940).

Representative of the holdings in this long line of cases is the NLRB decision which was enforced in *NLRB v. Franks Bros. Co.*, 137 F.2d 989 (1st Cir. 1943). There, some of the employees designated the International on their authorization cards while others designated the affiliated Local District Council. The court said that "[w]ith this obvious tie-up between the Boston Joint Board of the Amalgamated Workers and the union [International], it cannot be said that in designating one or the other the employees expected to be represented by different unions." *Id.* at 992.

---

2. The Cross-Check Election Agreement provided that, if the majority were verified, "the Employer agrees to bargain, upon request, with the Union as exclusive representative of ... the employees...." "Union" was used in the agreement to refer to Millmen and Industrial Carpenters Local 262. The agreement was signed by Franco for Local 262, the Union, and by Moreton for CAM, the Employer.

In *Dolores, Inc.*, 98 N.L.R.B. 550, 554 (1952), the NLRB held that where the International, rather than the Local, is named as the bargaining representative on union designation cards, the variance is not fatal and the Local may properly represent the employees as bargaining agent. Similarly, in *Local 707 Highway & Local Motor Freight Drivers*, 196 N.L.R.B. 613 (1972), the NLRB noted that in filling out union designation cards the test is not whether the union's name or number is properly inscribed; rather, the important factor is that the "one labor organization then active among the Company's employees" is the one which the employees intended to designate. *Id.* at 624–25. If the intent of the employees is clear, reasoned the Board in *Motor Freight Drivers*, then, whether the employees wrote in the correct union name or number is irrelevant.

Finally, in *A & D Trucking Co.*, 137 N.L.R.B. 915 (1962), the business manager of Teamsters Local 379 solicited authorization cards. The cards read "Application For Membership—International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America." While there was a blank line for the insertion of the Local Union number, a majority of employees did not fill in the Local Union name or number. After hearing the testimony of the employees, the NLRB concluded that the intent of the employees was to join the Local whether or not any of them was aware of or designated the Local's name or number. The NLRB added: "Moreover, it has long been settled that a designation of a parent labor organization as bargaining representative is a sufficient and valid designation of an affiliate." *Id.* at 921 (footnote omitted).

In the case before us, the record establishes that Franco was the business manager of the Local. His additional role vis-a-vis the District Council is not persuasive evidence that the employees thought the District Council or the International sought their designation, given the aforementioned interrelationship of the Local, the District Council and the International. *Franks Bros. Co.*, 137 F.2d at 992. The record further establishes that the Local was the only entity appropriate to represent this group of employees. Based upon this record, the Board concluded that there was no evidence indicating that the employees were "confused, or believed that they were designating the International Union as an organization separate from the [Local] union which was requesting their signatures." Board Decision, page 3.

The Board was correct when it followed the above cited line of NLRB cases. The existence of a rebuttable presumption allowing an affiliate to act when the authorization cards designate a parent labor organization is a rule which is consistent with the underlying goals of the Act.[3] It permits the expeditious resolution of representation questions, a critical element if the Act is to serve its intended purpose. Technical objections to employees' efforts to obtain union representation are all too often designed to delay and frustrate the employees' will and to allow the employer to bring about radical changes in the work force and the bargaining climate.[4] Further, the rule comports with the reality of union organizing campaigns and the practical nature of workers' interest in effective representation. As the NLRB noted, ordinarily employees who sign authorization cards want representation from the union that is seeking to organize them, and they are not concerned with whether the name of the International or the Local is listed on the authorization cards. At the same time, the rule provides a desirable degree of flexibility. In the rare case in which employees truly are misled by the naming of an International rather than a Local and do not wish the Local to represent them, the presumption may be rebutted by a clear showing of their intent.

---

3. *See, e.g.*, § 7 of the Labor Management Relations Act (29 U.S.C. § 157) which grants employees the right to self-organization and to bargain collectively through representatives of their own choosing.

4. This case presents a dramatic illustration of the changes which may occur when bargaining is delayed unduly—none of the employees who signed authorization cards is presently in CAM's employ.

There is insufficient evidence in the record to demonstrate that the employees did not intend to authorize the Local to act as their bargaining representative when they signed authorization cards containing the name of the International. The Board concluded that the employees intended to be represented by the Local, the union which was seeking to organize them. This conclusion is supported by substantial evidence in the record. The Board's bargaining order in favor of the Local will be enforced.[5]

ORDER ENFORCED.

---

**5.** In its decision, the ALJ noted two "conflicting" lines of cases, the line of cases discussed in this opinion and a second line adopted by the ALJ. The second line, relied upon by respondent on appeal, consists of two cases which are not controlling and which do not conflict with our opinion. In *O & T Warehousing Co.*, 240 N.L.R.B. 386 (1979), the Board required the union seeking certification to select the actual representative to be voted upon in a Board conducted election instead of permitting the union to list a number of alternatives on the official NLRB ballot. However, it allowed the union to use authorization cards which contained these alternative choices. *Id.* at 387. *M. A. Norden Co.*, 159 N.L.R.B. 1730 (1966), involved a union's attempt to amend a certification by changing the Board certified bargaining representative after the employer had already commenced bargaining with the certified representative.