**HOTEL & RESTAURANT EMPLOYEES UNION LOCAL 217, Plaintiff–Appellant,**

v.

**J.P. MORGAN HOTEL, Defendant–Appellee.**

No. 722, Docket 92–7925.

United States Court of Appeals, Second Circuit.

Argued Dec. 17, 1992.

Decided June 14, 1993.

Thomas W. Meiklejohn, Hartford, CT (Gould, Livingston, Adler & Pulda, Hartford, CT, of counsel), for plaintiff-appellant.

Anthony A. Ball, Hartford, CT (Pepe & Hazard, Hartford, CT, of counsel), for defendant-appellee.

Before: CARDAMONE, PIERCE and ALTAMARI, Circuit Judges.

CARDAMONE, Circuit Judge:

The issue before us is one of jurisdiction under § 301(a) of the Labor Management Relations Act of 1947 (Act), 29 U.S.C. § 185(a) (1988). An employer and labor organization signed a contract which, upon the employer's purported repudiation, the union sought to have enforced in the district court. Viewing the agreement as implicating a matter of representation and therefore subject to the primary jurisdiction of the National Labor Relations Board (NLRB or Board), the district court declined jurisdiction. Plainly, a district court should forbear, in obedience to reasoned prudential concerns, from exercising its jurisdiction. But there is a limit beyond which such forbearance ceases to be a virtue. Here, where no prudential concerns are found, that point is reached and jurisdiction over this § 301 contract should have been exercised.

J.P. Morgan Hotel (employer or hotel), operating a hotel and restaurant in Hartford, Connecticut, and Local 217 of the Hotel and Restaurant Employees Union (Local 217 or union) signed a contract that governed their conduct during a union organizing campaign. This so-called neutrality contract designated a procedure by which the union could obtain employer recognition, and further provided that any dispute would be submitted to arbitration. Unfortunately, bad feelings displaced good intentions. A dispute arose regarding whether—using the designated procedure—Local 217 had garnered a majority of hotel employees so as to be entitled to recognition. When this dispute went to the arbitrator, he held for the union, whereupon the hotel repudiated the contract. As a result Local 217 instituted the instant action in August 1991 in the United States District Court for the District of Connecticut (Nevas, J.), seeking declaratory and injunctive relief in the form of an order confirming and enforcing the arbitration award.

## BACKGROUND

Local 217 and the J.P. Morgan Hotel signed a three-page "Memorandum of Agreement" on June 28, 1990. In it the parties contracted that Local 217 could solicit support from a designated bargaining unit of 90 hotel employees, not previously represented by any union. Local 217 undertook to forego the right to picket authorized under the Act, 29 U.S.C. § 158(b)(7)(C) (1988), and in turn the hotel promised the union access to its employees in non-public areas of the hotel. Local 217 pledged it would notify the hotel in advance of visits by its representatives and that during those visits it would not coerce or threaten hotel employees or interfere with hotel operations. The employer agreed not to interfere with the organizing effort or to mount a campaign with its employees opposing the union.

The neutrality contract set forth a "card check" procedure by which the union could show that it had the support of a majority of the employees. The validity of the cards signed by employees was to be determined by a neutral third party. If that third party found a majority of employees had designated Local 217 as their exclusive collective bargaining representative, the contract went on to state, then the employer bound itself to recognize the Local. The hotel further agreed not to file a petition with the NLRB asking for a recognition election. The contract bound the parties to submit any disputes concerning the contract's interpretation or application to arbitration.

An arbitrator was thereafter mutually selected by the parties to review the cards and to resolve any contractual disputes. The union then began its organizing campaign. On January 11, 1991 it informed the hotel that it had cards signed by a majority of hotel employees. A week later the arbitrator conducted a hearing to determine their validity. At the hearing the hotel presented a petition signed by 37 employees who stated they had been coerced into signing designating cards, and it also filed handwritten requests from ten employees seeking to revoke their previously given authorizations. In a ruling dated January 28, 1991 the arbitrator decided the revocations would be ineffective if they were made after January 11, 1991, the date when the union claimed it had gained majority support. He also stated the card count would be delayed until the coercion charges were resolved because authorization cards obtained through coercion were invalid.

The arbitrator proceeded to survey by mail the hotel employees who had both signed authorization cards and either signed the employer's petition or submitted written revocations. None of those surveyed responded—although each received a stamped, self-addressed return envelope—that he or she had been coerced. The arbitrator thereupon ruled on February 18, 1991 that there had been no coercion. Subsequently, on April 10, 1991, the NLRB also dismissed a coercion charge filed on February 15 by a hotel employee against Local 217. The Board found insufficient evidence that the union had restrained or coerced hotel employees during the course of its organizational campaign.

The card count originally had been scheduled by the arbitrator for January 1991. But he had held the matter in abeyance pending the NLRB's just-cited investigation into a coercion charge. Before the Board ruled on that charge, the hotel terminated the agreement. In a letter dated March 7, 1991 it cited "union coercion" and "the union's other actions in violation of the Agreement" as justifications for its withdrawal. The employer subsequently refused to deal with the arbitrator because the contract from which he derived his authority was now, as a result of the hotel's action, "defunct."

The arbitrator nonetheless issued a ruling on May 20, 1991 in which he found the hotel bound by the neutrality contract because it was not terminable at will and because there was no evidence the union had been guilty of violating its terms. The arbitrator ordered the hotel to produce documents to allow him to validate employee signatures on the union authorization cards. This validation check was completed on July 3, and it was determined that the union had attained majority support. Local 217 attempted unsuccessfully to schedule bargaining sessions with the hotel on July 8 and July 18, 1991.

When the union commenced the instant action in August 1991 the hotel moved to dismiss the suit for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1). The union cross-moved for summary judgment enforcing the arbitration award. In a judgment filed February 12, 1992 the district court held that § 301(a) of

the Act did not grant it jurisdiction over this representation dispute and dismissed Local 217's complaint. It also dismissed as moot the union's motion for summary judgment.

## DISCUSSION

### I  Federal Courts' Jurisdiction Under § 301(a)

#### A. *The Statute*

In granting the employer's motion to dismiss, the district court believed the parties' neutrality agreement was not a "contract" falling within § 301(a) because it did not govern the terms and conditions of hotel workers' employment. It also believed the pact sought to bypass Board procedures for representation elections. Hence, it ruled that it lacked subject matter jurisdiction to grant the declaratory and injunctive relief sought.

■ Questions of subject matter jurisdiction are questions of law that we review *de novo*. The NLRB has primary jurisdiction over matters unique to labor management relations arising under the Act. It is charged with resolving unfair labor practices and representation issues, such as defining a bargaining unit and certifying an exclusive bargaining agent. *See* 29 U.S.C. §§ 159, 160 (1988) (referring respectively to representation and unfair labor practices); *see also Amalgamated Clothing & Textile Workers Union v. Facetglas, Inc.*, 845 F.2d 1250, 1251–52 (4th Cir.1988). But those disputes that arise under a contract may under § 301(a) of the Act be determined in a judicial, rather than the administrative, forum.

An examination of § 301 leads us to conclude there is federal court jurisdiction. The statute states:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (1988). The section grants subject matter jurisdiction to a district court in an action for violation of a contract between an employer and a labor organization in an industry affecting commerce. This plain language confers jurisdiction on the district court on the facts of this case.

### B. Courts' Concurrent Jurisdiction with the NLRB Under § 301(a)

■ Concededly, the Board enjoys broad authority in the representation area of labor law. For example, an employer generally may insist upon a Board-conducted election to determine whether a majority of its workers supports an organizing union. *See Linden Lumber Div., Summer & Co. v. NLRB*, 419 U.S. 301, 310, 95 S.Ct. 429, 434, 42 L.Ed.2d 465 (1974). Further, the Board's selection of an appropriate bargaining unit is so firmly within its discretionary power that it is seldom if ever disturbed. *See South Prairie Constr. Co. v. Local No. 627, Int'l Union of Operating Eng'rs*, 425 U.S. 800, 805, 96 S.Ct. 1842, 1844, 48 L.Ed.2d 382 (1976) (per curiam). Yet, it is wrong to say, as the hotel does, that the NLRB has *exclusive* jurisdiction over representation issues. Rather, § 301(a) grants courts concurrent jurisdiction over representation issues arising under a contract.

"The primary jurisdiction of the Board does not deprive the courts of jurisdiction, rather, it raises prudential concerns about whether to exercise it." 1 *The Developing Labor Law* 975 (Patrick Hardin et al. eds., 3d ed. 1992). The case upon which the hotel relies, *Local 807, Int'l Bhd. of Teamsters v. Brink's Inc.*, 744 F.2d 283 (2d Cir.1984), is an example of such comity. No § 301(a) jurisdiction was found in *Brink's* because no valid contract existed between the employer and the labor organization when their dispute arose. *Id.* at 286. In addition, the merits of the representation issue sought to be litigated in court already were before the Board in an unfair labor practice proceeding. We deferred to the NLRB. *Id.* at 286–87. Thus, the Board's authority in representation disputes is not complete and exclusive, but under § 301 concurrent with the federal court where such a dispute arises under a contract.

Such § 301(a) jurisdiction over representation disputes is similar to the limited authority of federal courts to adjudicate unfair labor practices arising under collective bargaining agreements. *See Smith v. Evening News Ass'n*, 371 U.S. 195, 197, 83 S.Ct. 267, 268, 9 L.Ed.2d 246 (1962).

In striking a balance between the NLRB's primary jurisdiction and a trial court's concurrent authority under § 301, courts generally decline to overturn an earlier Board determination made in a representation matter. *See Lexington Cartage Co. v. International Bhd. of Teamsters Local 651*, 713 F.2d 194, 195 (6th Cir.1983); *Local Union 204 of Int'l Bhd. of Elec. Workers v. Iowa Elec. Light & Power Co.*, 668 F.2d 413, 419 n. 11 (8th Cir.1982). More importantly, recognizing the Board's expertise, courts ordinarily refrain from making *initial* decisions in the representation area. *See South Prairie*, 425 U.S. at 803–05, 96 S.Ct. at 1843–44; *see also Facetglas*, 845 F.2d at 1252; *Cappa v. Wiseman*, 659 F.2d 957, 959 (9th Cir.1981); *West Point–Pepperell, Inc. v. Textile Workers Union*, 559 F.2d 304, 306 (5th Cir.1977) (per curiam). *But see, Trustees of Colo. Statewide Iron Workers (Erector) Joint Apprenticeship and Training Trust Fund v. A & P Steel, Inc.*, 812 F.2d 1518, 1526 (10th Cir. 1987) (making initial decision where the representation issue is collateral to § 301 dispute).

There are two significant situations where a court, while not making an initial representation decision, nonetheless must become involved in the parties' representation dispute. In the first, the employer and labor organization have reached a private accord governing representation. The second is where a contract contains a provision for arbitration. Thus, there are three ways in which a representation matter is initially determined: by the Board, by the parties, or by an arbitrator. In the present case, there is no earlier representation Board decision to which we need defer. Further, we are not precluded from exercising § 301 jurisdiction over this representation dispute because the parties have both entered a contract and engaged in arbitration proceedings. We examine each in turn.

### C. Does This Private Agreement Meet § 301's Jurisdictional Tests?

■ Although a court as noted—deferring to the NLRB—generally will not make an initial representation decision, an employer and labor organization are not thereby foreclosed from reaching a private agreement on union recognition. Such a contract, which bypasses Board-conducted elections, provides an alternative method for employees to accept or decline union representation. *See Hotel Employees, Restaurant Employees Union, Local 2 v. Marriott Corp.,* 961 F.2d 1464, 1468 (9th Cir.1992); *see also Georgetown Hotel v. NLRB,* 835 F.2d 1467, 1470–71 (D.C.Cir.1987) (employer voluntarily may elect to be bound by card check procedure in lieu of Board election); *Mo–Kan Teamsters Pension Fund v. Creason,* 716 F.2d 772, 775 (10th Cir.1983) (valid contract in which employer recognized union majority), *cert. denied,* 464 U.S. 1045, 104 S.Ct. 716, 79 L.Ed.2d 178 (1984); *NLRB v. Cam Indus., Inc.,* 666 F.2d 411, 412 (9th Cir.1982) (valid card check contract between employer and union).

To state the matter in other words: whether § 301 grants jurisdiction to a district court to enforce a private representation agreement is answered first, by asking whether the employees had a fair opportunity to decide to accept or reject the union, second, by examining the contract to see if it forwards labor peace and, third, by determining if it governs the employer's relationship with its employees. Critical to the validity of such a private contract is the first question—whether the employees were given an opportunity to decide whether to have a labor organization represent them. *See Marriott,* 961 F.2d at 1468. Here the Memorandum of Agreement signed by the hotel and Local 217 is an example of a valid contract governing representation. Each gave up rights under the Act—the union agreed to forego picketing and the hotel agreed to accept the results of a card check—in an effort to make the union recognition process less burdensome for both. Thus, the hotel employees had the power to accept or reject the union simply by signing or refusing to sign authorization cards.

The hotel contends the contract is not one within § 301(a) because the union did not have the majority support of hotel employees when it signed the pact in June 1990. This argument is without merit. It is true that a union must represent a majority of employees in order to enter a valid collective bargaining agreement, *see International Ladies' Garment Workers' Union v. NLRB,* 366 U.S. 731, 737, 81 S.Ct. 1603, 1607, 6 L.Ed.2d 762 (1961), but § 301(a) jurisdiction is not limited to interpreting collective bargaining agreements. *See District 2 Marine Eng'rs Beneficial Ass'n v. Grand Bassa Tankers, Inc.,* 663 F.2d 392, 397 (2d Cir.1981). The term "contracts" in § 301(a) is read broadly to see if the second and third tests are met, that is, whether the contract under consideration advances the goal of maintaining industrial peace in the workplace, *see Retail Clerks Int'l Ass'n, Local Unions Nos. 128 & 633 v. Lion Dry Goods, Inc.,* 369 U.S. 17, 27, 82 S.Ct. 541, 547, 7 L.Ed.2d 503 (1962), and whether it controls the terms and conditions of an employer's relationship with its employees. *See Grand Bassa,* 663 F.2d at 398.

The subject contract passes these tests because its underlying aim was to resolve peacefully those tensions inevitably flowing from a union organizing effort. *See NLRB v. Drivers, Chauffeurs, Helpers, Local Union No. 639,* 362 U.S. 274, 285–86, 80 S.Ct. 706, 712–13, 4 L.Ed.2d 710 (1960) (discussing legislative debate about coercion and violence accompanying some union organizing efforts). Under the Act, of course, an employer is entitled to express "any views, argument, or opinion" on union organization efforts so long as its "expression contains no threat of reprisal or force or promise of benefit." 29 U.S.C. § 158(c) (1988); *accord NLRB v. Gissel Packing Co.,* 395 U.S. 575, 617, 89 S.Ct. 1918, 1941, 23 L.Ed.2d 547 (1969). Hence, the agreement also governed the hotel's relations with its employees because the hotel agreed not to campaign against the union with its employees.

Consequently, this contract is one that a district court may enforce under § 301(a). Other circuits have exercised § 301(a) jurisdiction over agreements that set forth the way in which a union may demonstrate ma-

jority status to an employer's satisfaction. The primary jurisdiction of the NLRB in representation matters is not thereby compromised because courts limit their holding to issues contained within the four corners of the contract. *See Marriott,* 961 F.2d at 1468 & n. 7; *Facetglas,* 845 F.2d at 1253; *District 2, Marine Eng'rs Beneficial Ass'n v. Amoco Oil Co.,* 554 F.2d 774, 778 (6th Cir.1977).

Moreover, enforcing the express terms of such a contract does not require a court to decide representation matters because the parties already have decided these issues on their own. For example, in *Marriott,* the employer's contractual obligation to accept card check results was enforced, but the court refused to imply terms covering the employer's obligation to provide union access to employees. 961 F.2d at 1468–69. Similarly, because the parties did not establish a procedure to validate the cards, the court did not decide where a validity dispute could be heard. *Id.* at 1468 n. 7. In contrast here the union's contract with the hotel clearly defined the parties' obligations during the course of the organizing campaign, provided for the card check procedure, and established arbitration as the forum to validate cards and resolve disputes.

### D. *Arbitration Clause in Contract*

█ Although persuaded that this private representation accord brings this contract within court's § 301 jurisdiction, our conclusion is strengthened by the significant inclusion in the contract of an arbitration provision. When considering whether jurisdiction lies with the NLRB or the federal courts, it must be remembered that disputes over the meaning of labor contracts have long been before arbitrators, not just before judges. *See* Michael I. Sovern, *Section 301 and the Primary Jurisdiction of the NLRB,* 76 Harv. L.Rev. 529, 532 (1963). The jurisdictional conflict, if any, therefore is between the NLRB's power to enforce agreements on the one hand, and that of courts/arbitrators on the other. Hence, it is of significance that in the contract before us there is a provision that disputes concerning the contract's application or interpretation were to be submitted to arbitration. In fact the parties submitted

this representation dispute to a mutually selected arbitrator, and it is his award that the union now seeks to enforce.

Arbitration is strongly favored as a mechanism to resolve disputes in the workplace, and to a large extent arbitral decisions are insulated from judicial review. *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 37, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987). Even were a dispute representational in nature, an arbitrator acting pursuant to a contract can make the initial decision on the merits, *see Carey v. Westinghouse Elec. Corp.,* 375 U.S. 261, 272, 84 S.Ct. 401, 409, 11 L.Ed.2d 320 (1964), and particularly here where arbitration is the device agreed to by the parties as a substitute for labor strife. *See United Steelworkers v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 578, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409 (1960).

The Supreme Court reasons that the presumption of arbitrability for employer/employee disagreements is a recognition of the arbitrator's greater expertise in resolving peacefully labor disputes. *AT & T Technologies, Inc. v. Communication Workers,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986). Hence, arbitration is an alternative that may be used to resolve labor disputes, *see Local No. 3–193 Int'l Woodworkers v. Ketchikan Pulp Co.,* 611 F.2d 1295, 1298–99 (9th Cir.1980), and courts do not usurp NLRB authority when enforcing the arbitration clauses of a private contract, even when the matter to be arbitrated is representational. *See Communications Workers v. US West Direct,* 847 F.2d 1475, 1478–79 (10th Cir.1988); *United Bhd. of Carpenters & Joiners, Local Union No. 1694 v. W.T. Galliher & Bros.,* 787 F.2d 953, 954 (4th Cir.1986).

The authority of the Board and the law of contracts administered by courts and arbitrators overlap, neither displacing the other. *See NLRB v. Strong Roofing & Insulating Co.,* 393 U.S. 357, 360–62, 89 S.Ct. 541, 544–45, 21 L.Ed.2d 546 (1969). The crucial *initial* representation decision is made by the arbitrator, as the parties agreed, and the court is presented with the much more narrow and common issue of interpreting a contract arbitration clause, over which its power

of review is extremely limited. *See Misco*, 484 U.S. at 36, 108 S.Ct. at 369. *Cf. Concourse Village, Inc. v. Local 32E, Serv. Employees Int'l Union*, 822 F.2d 302, 304–05 (2d Cir.1987) (judicial review limited to determining whether valid contract arbitration clause covers dispute and need not consider prior NLRB decision about bargaining unit make-up). There is little or no danger therefore that courts enforcing a contract arbitration clause will decide issues outside their jurisdiction, disguising such action as a § 301 contract construction. *West Point–Pepperell*, 559 F.2d at 306. Hence, all the prudential concerns raised are without substance.

In sum, we hold the contract between the hotel and the Local 217 was not an impermissible attempt to bypass Board election procedures. The jurisdiction of the NLRB over representation matters does not preclude private agreements concerning the same issues, and a court may use its concurrent § 301(a) jurisdiction to enforce arbitration clauses appearing in such contracts.

### II Summary Judgment Motion

■ The union also appeals the district court's dismissal of its motion for summary judgment enforcing the arbitrator's July 3 recognition award. The district court denied the motion as moot in light of its dismissal of the union's complaint for lack of subject matter jurisdiction. It reviewed the pleadings as required by the Rule 12(b)(1) motion, but did not reach the merits of Local 217's Rule 56 motion. *See* 6 James W. Moore *et al.*, *Moore's Federal Practice* ¶ 56.03, at 53–54 (2d ed. 1993); *see also id.* ¶ 56.27[3], at 867 ("Where the reversed judgment is on the pleadings, this should not foreclose a motion, by either party, for summary judgment on matters dehors the pleadings"). Ordinarily this issue would be remanded to the district court for it to have an opportunity to rule on the merits of the motion. *Cf. Cruden v. Bank of N.Y.*, 957 F.2d 961, 978 (2d Cir.1992) (after reversing in part district court's dismissal, claims not considered on their merits remanded to district court for further proceedings); *Goetz v. Windsor Cent. Sch. Dist.*, 698 F.2d 606, 610 (2d Cir.1983) (district court on remand ordered to reconsider motion to amend complaint because issue was no longer moot).

But, because the only matters raised by the hotel as ostensible genuine issues of material fact relate to the alleged coercion of the hotel's employees—which the arbitrator and the NLRB have already decided adversely to the employer—we see no reason to remand this motion to the district court for further proceedings. Without any genuine factual issue, summary judgment should be entered in favor of the union.

### CONCLUSION

Accordingly, we reverse the district court's order dismissing Local 217's complaint for lack of subject matter jurisdiction and remand this case to the district court for it to enter an order reinstating the complaint and granting summary judgment to Local 217 enforcing the contract with J.P. Morgan Hotel.

Reversed and remanded.