4200 AVENUE K LLC, Petitioner,

v.

Michael FISHMAN, Trustee Local
32B–J, Seiu, AFL–CIO
Respondent.

No. 00 Civ. 8814(RLC).

United States District Court,
S.D. New York.

April 4, 2001.

Morris Tuchman, New York, New York, for Plaintiff, Morris Tuchman, of counsel.

Raab, Sturm & Goldman, LLP, New York, New York, for Defendant, Ira A. Sturm, of counsel.

## *OPINION*

ROBERT L. CARTER, District Judge.

Employer, 4200 Avenue K, LLC a/k/a 4200–4211 Avenue K, LLC ("petitioner"), moves for summary judgment permanently staying arbitration with union regarding failure to comply with collective bargaining agreement. Local 32B–32J, SEIU, AFL–CIO, ("respondent"), through its Trustee, Michael Fishman, cross-moves for summary judgment dismissing petitioner's motion to stay arbitration and granting its counterclaim to compel arbitration.

## BACKGROUND

Petitioner is the owner of two residential apartment buildings, 4200 and 4211 Avenue K in Brooklyn, New York, which it purchased in February, 1999. At the time of purchase, petitioner assumed a collective bargaining agreement ("agreement") with respondent, a union whose members are employed primarily in the building service industry.

Article VI, Section 1 of the agreement provided for binding arbitration of all disputes:

A Contract Arbitrator shall have the power to decide all differences arising between the parties to this agreement as to interpretation, application or performance of any part of this agreement. . . .

(Answer, Ex. A.)

Article XVIII provided that the agreement would expire on April 20, 2000, but it also contained an evergreen clause stating that:

Upon the expiration date of this agreement, the same shall continue in full force and effect for an extended period until a successor agreement has been executed. During the extended period, all terms and conditions shall be in effect and the parties shall negotiate for a successor agreement retroactive to the expiration date. . . . In the event the parties are unable to agree upon the terms of a successor agreement, either party upon ten (10) days' written notice to the other may cancel this agreement.

(Answer, Ex. A.)

By letter dated April 28, 2000, petitioner advised respondent that "[p]ursuant to the terms of our Collective Bargaining Agreement, the Employer hereby cancels the agreement." (Sturm Aff., Ex. B.) Respondent neither answered the letter nor sought arbitration at that time. On June 6, 2000, petitioner sent a second letter to respondent, "withdraw[ing] recognition" of the union inasmuch as it had "objective evidence that [the] union no longer has the support of the employees" working at petitioner's buildings. (Sturm Aff., Ex. C.) On October 6, 2000, respondent demanded arbitration on grounds that "[s]ince the date of purchase the Employer has failed to pay the contractual wage rates . . ., the contributions owed to the Fringe Benefit Funds,

and has interfered with ... employees in the exercise of their rights to Union representation." (Sturm Aff., Ex. D.) Respondent further asserted that the agreement's terms and conditions remain in effect following expiration "until a successor agreement has been executed" and sought an affirmative directive that the employer be required to bargain for a successor agreement. (*Id.*) The same day, respondent filed an unfair labor practice charge with the National Labor Relations Board ("NLRB"). Respondent subsequently withdrew the NLRB charge on December 12, 2000. (Sturm Letter Dec. 18, 2000.) Petitioner filed an unfair labor practice charge on December 18, 2000. (Tuchman Letter Dec. 19, 2000.) The NLRB dismissed that charge on March 23, 2001. (Sturm Letter March 26, 2001.)

On November 7, 2000, petitioner moved to stay arbitration in the Supreme Court for the State of New York. On November 20, 2000, respondent removed the petition to this court pursuant to 28 U.S.C. § 1441 on the ground that a federal question was raised under the Labor–Management Relations Act, 29 U.S.C. § 185. Respondent cross-moved for an order denying petitioner's motion to stay arbitration and compelling petitioner to arbitrate the issues raised in its letter dated October 6, 2000, pursuant to 9 U.S.C. § 4. Both parties moved for summary judgment pursuant to Rule 56, F.R. Civ. P.

## DISCUSSION

### I.

The court's responsibility in deciding a summary judgment motion is "to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins.*, 804 F.2d 9, 11 (2d Cir.1986) (citations omitted). When parties cross-move for sum-

mary judgment, each motion must be evaluated on its own merits, "taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Schwabenbauer v. Board of Educ. of City School Dist. of City of Olean,* 667 F.2d 305, 314 (2d Cir.1981). After reviewing the parties' submissions, the court finds that there are no genuine issues of material fact. As a result, the court will proceed to address the remaining questions of law, namely, whether the parties' disputes are arbitrable.

### II.

■ The arbitrability of the parties' disputes is for the court, not the arbitrator, to decide at the outset. *See AT & T Techs., Inc. v. Commun. Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). The Supreme Court has held that "[t]he function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." *United Steelworkers of Am. v. American Mfg. Co.,* 363 U.S. 564, 567–68, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). The Supreme Court emphasized that in order to effectuate the federal policy favoring arbitration of labor disputes, an "order to arbitrate ... should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navig. Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

In the instant case, the arbitration clause is broadly worded, providing a contract arbitrator with the power to decide all questions of contract interpretation, ap-

plication and performance. The question for the court, therefore, is whether this broad arbitration clause is susceptible of an interpretation that covers each of the asserted disputes.

Petitioner does not disagree that it is obligated to arbitrate disputes arising prior to its purported cancellation of the agreement on April 28, 2000. (Aff. in Support of Petition to Stay, ¶ 9.) Therefore, respondent's motion to compel arbitration for claims arising prior to that date is granted.

Petitioner moves to stay arbitration of any disputes arising after April 28, 2000 on the grounds that it canceled its agreement with the union by a letter of that date, per Article XVIII of the agreement. Article XVIII provides that the parties may cancel the agreement only if they "are unable to agree upon the terms of a successor agreement," and only if the canceling party has provided "ten (10) days' written notice." Petitioner contends that by virtue of its withdrawal of recognition of the union, the "parties are unable to agree" on a successor agreement, and therefore its letter of April 28, 2000 properly terminated the agreement. Any disputes arising from actions occurring after cancellation, including its withdrawal of union recognition, are not subject to arbitration.

Respondent counters that Article XVIII imposes a good faith obligation to negotiate for a successor agreement as a prerequisite to cancellation. Petitioner's failure to pursue such negotiations rendered its cancellation ineffective. Petitioner thereby remained obligated to abide by the agreement's terms and conditions. Respondent further asserts that its dispute with petitioner over the effectiveness of its April 28, 2000 letter is essentially a dispute as to the proper interpretation of Article XVIII, and by the terms of the agreement all questions of interpretation must be arbitrated. Respondent therefore moves for arbitration of all disputes, including questions of termination.

■ The court agrees with respondent that the parties have a dispute as to the interpretation of Article XVIII, and subject to such interpretation, as to their obligations to perform the agreement's other terms and conditions. Since the broad arbitration clause covers all questions of contract interpretation and performance, arbitration is the proper recourse for resolution of these disputes. *See Abram Landau Real Estate v. Bevona,* 123 F.3d 69, 73 (2d Cir.1997) ("Where the agreement contains a sweeping arbitration clause covering all disputes involving the meaning of terms and provisions of the agreement and where the arbitration clause does not expressly exclude disputes over the termination provision or the 'evergreen' clause, disputes over these matters should be submitted to arbitration." (citing *Rochdale Village Inc. v. Public Service Employees Union, Local No. 80,* 605 F.2d 1290, 1294 (2d Cir.1979))).[1]

The cases on which petitioner relies are not to the contrary. In *Litton Fin. Printing Div. v. NLRB,* 501 U.S. 190, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991), the Supreme Court limited postexpiration arbitration to matters that arise before expiration, to actions taken after expiration that infringe vested rights, or to rights that survive the termination of the agreement according to normal contract principles. *See id.* at 206,

---

1. Petitioner argues that *Abram Landau* is not controlling because the evergreen clause in that case contained no provision for cancellation of the agreement by notice. While this fact may impact the merits of the case once before the arbitrator, it has no implications for the rule set forth by *Abram Landau* that questions of contract interpretation, including interpretation of an evergreen clause, are for the arbitrator at the outset.

111 S.Ct. 2215. *Litton* is inapplicable here, where the question at issue is whether the agreement expired, not whether a post-expiration grievance is arbitrable. *See Duane St. Assocs. v. Local 32B–32J,* 2000 WL 802889, at *2 (S.D.N.Y. June 21, 2000) (Stein, J.) (distinguishing termination dispute case from *Litton* ).

Petitioner also cites to *Local 807 IBT v. Brink's Inc.,* 744 F.2d 283 (2d Cir.1984), and *Diamond Glass Corp. v. Glass Warehouse Workers & Paint Handlers Local Union 206,* 682 F.2d 301 (2d Cir.1982), for the proposition that an employer's refusal to negotiate a subsequent collective bargaining agreement upon expiration of an existing agreement falls outside the scope of the existing agreement and is not subject to arbitration. *Local 807 IBT* is inapposite since, in that case, there was no evergreen clause maintaining the terms of the agreement, including the duty to arbitrate, upon expiration. *See id.* at 286. Likewise, *Diamond Glass Corp.* is inapposite since, there, the union's arbitration notice was incomplete, failing to link the demand for arbitration to any article or section of the expired agreement. *See id.* at 303–04. Here, respondent has made a colorable claim that the requirement to arbitrate arises, *inter alia,* under Article VI, Section I and Article XVIII of the agreement.[2]

### III.

■ Petitioner asserts that the court should defer this case to the NLRB because representational issues, specifically the union's continued majority status, do-

minate the matter, and questions of representation fall under the NLRB's primary jurisdiction. It is well established that federal courts and the NLRB have concurrent jurisdiction over labor disputes arising under a contract. *See* 29 U.S.C. § 185(a). Nonetheless, courts generally refer cases to the NLRB "which, stripped to essentials, are representation cases," and maintain jurisdiction over cases "which turn on [an] interpretation of the contract." *Local 812 GIPA v. Canada Dry Bottling Co. of New York & Manhattan Beer Dist.,* 1999 WL 301692, at *5 (S.D.N.Y. May 13, 1999) (McKenna, J.) (citing *United Ass'n Local 342, AFL–CIO v. Valley Eng'rs,* 975 F.2d 611, 614 (9th Cir.1992)).

■ This case falls squarely in the second category. The narrow question before the court is whether the arbitration clause applies to conflicts of interpretation arising under the evergreen clause. *See* discussion *supra* at 341-42. Questions of arbitrability, which involve traditional judicial functions of contract interpretation, are properly within the jurisdiction of federal courts. *See AT & T Techs., Inc.,* 475 U.S. at 649, 106 S.Ct. 1415.

■ Likewise, "when considering whether jurisdiction lies with the NLRB or the federal courts, it must be remembered that disputes over the meaning of labor contracts have long been before arbitrators, not just before judges." *Hotel & Restaurant Emp. Union Local 217 v. J.P. Morgan Hotel,* 996 F.2d 561, 567 (2d Cir.

---

**2.** Petitioner further cites to *Rochdale Village Inc.,* 605 F.2d at 1296–97, for the proposition that an arbitration clause in a collective bargaining agreement does not apply to a termination dispute arising under a collateral agreement. Petitioner argues that the instant termination dispute arises under a collateral agreement, namely the letter of assumption it

signed at purchase of the buildings. Petitioner's reliance on *Rochdale* is misplaced. The *Rochdale* court's finding was limited to a collateral agreement detailing termination methods different from those outlined in the collateral bargaining agreement, not a collateral agreement such as an assumption letter. *See id.*

1993) (citation omitted). The crux of the dispute before the arbitrator in the instant case will be whether petitioner's purported cancellation complied with the terms of the agreement. Therefore, the dominant issue before the arbitrator will remain one of contract interpretation, an area of arbitrational expertise. *See Litton Fin. Printing Div.*, 501 U.S. at 202, 111 S.Ct. 2215.

Moreover, to the extent that representational issues arising under the agreement must be reached by the arbitrator, the Second Circuit has held that "courts do not usurp NLRB authority when enforcing the arbitration clause of a private contract, even when the matter to be arbitrated is representational." *Hotel & Restaurant Emp. Union*, 996 F.2d at 567. Therefore, arbitration of any representational issues arising under the agreement is appropriate. However, if the arbitrator finds that the agreement was effectively terminated by petitioner, then the question of the union's continued majority status no longer arises under the agreement. At that point, the parties may seek review of any remaining representational issues before the NLRB.[3] *See Communication Workers of America, AFL–CIO, v. U.S. West Direct*, 847 F.2d 1475, 1479 (10th Cir.1988) ("'Since the Board will not defer to an arbitrator's decision which is repugnant to the Act, no prejudice will result for allowing an arbitrator to clear up the factual and contractual underbrush and, perhaps,

remove any need to consider the statute.'" (citations omitted)).

## IV.

Petitioner contends that the motion to compel arbitration is time barred in that over seven months passed between petitioner's date of cancellation and respondent's motion to compel arbitration. The six-month statute of limitations applicable to actions to compel arbitration, *see DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 171, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), accrues only "when a party unequivocally refuses a demand to arbitrate." *Schweizer Aircraft Corp. v. Local 1752, Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 29 F.3d 83, 87 (2d Cir.1994) (citation omitted). Here, respondent's letter demanding arbitration was dated October 6, 2000. Petitioner responded by filing a motion to stay on November 7, 2000. It appears that this was petitioner's only unequivocal refusal to arbitrate. Since respondent's motion to compel arbitration was dated November 28, 2000, only twenty-one days after the refusal to arbitrate, respondent's motion to compel arbitration was timely.[4]

## CONCLUSION

For the foregoing reasons, petitioner's summary judgment motion to permanently stay arbitration is denied. Respondent's

---

**3.** Petitioner also asserts that the court should defer to the NLRB because both parties have, in effect, chosen that forum through their filing of unfair labor practice charges. This argument is moot since the respondent has withdrawn its NLRB charge, and the NLRB has dismissed petitioner's charge, thereby rendering neutral any danger of inconsistent verdicts. *See Local 812 GIPA*, 1999 WL 301692, at *5 (considering, *inter alia*, whether there exists a danger of inconsistent rulings and whether a prior application to the agency

has been made in deciding whether an agency has primary jurisdiction).

**4.** Petitioner further appears to raise the defense of laches, claiming that respondent's delay in demanding arbitration makes a "mockery" of the need for prompt resolution of grievances. (Pet.'s Answer & Reply, p. 4.) Since no express time limitation was included in the arbitration clause, this issue is exclusively for the arbitrator. *See Conticommodity Servs. Inc. v. Philipp & Lion*, 613 F.2d 1222, 1226 (2d Cir.1980).

cross-motion for summary judgment dismissing petitioner's motion to stay arbitration and compelling arbitration is granted.
**IT IS SO ORDERED.**