## HOTEL EMPLOYEES AND RESTAURANT EMPLOYEES UNION, Local 57, Plaintiff,

v.

## SAGE HOSPITALITY RESOURCES, L.L.C., Defendant.

No. CIV.A. 02–1624.

United States District Court, W.D. Pennsylvania.

Sept. 30, 2003.

Terry K. Leckman, Lipsitz, Nassau, Schwartz & Leckman, Arlus J. Stephens, Davis, Cowell & Bowe, Washington, DC, for Hotel Employees and Restaurant Employees Union, Local 57, plaintiff.

Arch Stokes, Stokes & Murphy, Atlanta, GA, Anne–Marie Mizel, John M. O'Donnell, Stokes & Murphy, Pittsburgh, PA, for Sage Hospitality Resources, LLC, defendant.

## *MEMORANDUM*

LANCASTER, District Judge.

This is an action for breach of contract. Plaintiff, Hotel Employees and Restaurant Employees Union, Local 57 ("Local 57"), allege that defendant Sage Hospitality Resources, L.L.C. ("Sage"), violated the arbitration clause of their Neutrality Agreement. Plaintiff seeks an order compelling defendant to arbitrate the dispute that has arisen with regard to defendant's recognizing Local 57 as the collective bargaining unit for defendant's employees. Defendant argues that the Neutrality Agreement is illegal and void *ab initio.* The parties have filed cross-motions for summary judgment.

For the reasons discussed below, plaintiff's motion for summary judgment will be granted, defendant's motion for summary judgment will be denied, and the parties will submit their dispute to arbitration pursuant to the Neutrality Agreement.

## I. *BACKGROUND*

Local 57 is a labor organization within the meaning of Section 5(2) of the National Labor Relations Act, 29 U.S.C. § 152(5). Sage operates the Pittsburgh Renaissance Hotel ("Hotel"). In 1998, Sage began plans to convert the Fulton Building in downtown Pittsburgh, Pennsylvania, into the hotel. As part of the financing for the project, Sage sought Tax Increment Financing ("TIF") from the Urban Redevelopment Authority of Pittsburgh. The TIF amounted to approximately $3.6 million. The City of Pittsburgh ("The City") is one of four bodies that make up the Urban Redevelopment Authority of Pittsburgh.

In January, 1999, the City adopted Resolution 45, which amended the City's participation in TIF by requiring Sage to enter into a "post-construction labor

agreement" with a union to guarantee labor peace. In July, 1999, the City passed Ordinance 22, which required contractors and employers in the hospitality industry to enter into collective bargaining agreements when the City has a proprietary interest. On February 13, 2001, the City passed a resolution rescinding its approval of the TIF agreement because Sage had not entered into an agreement under Resolution 45 and Ordinance 22.

On February 20, 2001, Local 57 and Sage signed the Neutrality Agreement, the validity of which is disputed in this case, to fulfill the requirements of Resolution 45. Sage contends that it only signed the agreement to avoid losing TIF. The Neutrality Agreement contains two provisions of interest to this case. First, it provided for a card check procedure under the City's oversight, whereby Local 57 would present cards requesting union representation signed by a majority of the Hotel's employees and Sage would provide a current list of Hotel employees and valid signature samples. Second, it provided an arbitration clause to resolve disputes arising under the Neutrality Agreement.

In June 2002, Local 57 requested the card check pursuant to the Neutrality Agreement. Sage refused to comply with the card check and also refused to arbitrate the matter pursuant to the arbitration clause.

## II. STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. However, a dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e., the material facts will preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. Anderson, 477 U.S. at 248, 106 S.Ct. 2505. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248–49, 106 S.Ct. 2505.

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one-sided that the movant must prevail as a matter of law.

## III. DISCUSSION

The parties agree that there are no factual disputes in this case and that the dispute is ripe for resolution. Similarly, the parties do not dispute that the contract, if valid, requires defendant to arbitrate the card check dispute. Therefore, this case turns on whether the Neutrality Agreement was legal and, if so, whether Sage signed the Neutrality Agreement under economic duress.

■ Once parties have entered into a contract, the contract is enforceable "[a]bsent illegality, unconscionableness, fraud, duress, or mistake [.]" Mellon Bank, N.A.

*v. Aetna Bus. Credit, Inc.,* 619 F.2d 1001, 1009 (3d Cir.1980). Defendant contends that the Neutrality Agreement was illegal because it overstepped provisions of the National Labor Relations Act ("NLRA").

■ Defendant first claims that the Neutrality Agreement is illegal under Section 7 of the NLRA, 29 U.S.C. § 157, because it interferes with the employees' statutory rights to choose their own collective bargaining agent or to refrain from such activities. Specifically, defendant argues that union organization must proceed under the procedure outlined in the NLRA, rather than the card check procedure detailed in the Neutrality Agreement.

■ The National Labor Relations Board ("NLRB") is generally granted primary jurisdiction over matters regarding labor relations, such as unfair labor practices and representation issues. *Hotel & Restaurant Employees Union, Local 217 v. J.P. Morgan Hotel,* 996 F.2d 561, 564 (2d Cir.1993). A union and an employer can, however, reach a private agreement to provide an alternative method of deciding union representation. *J.P. Morgan Hotel,* 996 F.2d at 566. In fact, card check procedures similar to the one disputed in this case have been upheld by other courts. *See Hotel Employees, Restaurant Employees Union, Local 2 v. Marriott Corp.,* 961 F.2d 1464 (9th Cir.1992); *see also Georgetown Hotel v. National Labor Relations Bd.,* 835 F.2d 1467 (D.C.Cir.1987). In this case, the parties signed an agreement that allowed for union certification through an alternative method rather than the NLRB's election procedure. Because it was not illegal for them to do so, we cannot say that the contract was illegal under Section 7 of the NLRA.

■ Defendant also asserts that the Neutrality Agreement violated Section 302 of the Labor Management Relations Act, ("LMRA"), which provides that employers cannot agree to give, nor can the union demand that it be provided with, "things of value." Defendant contends that the Neutrality Agreement requires the union be provided with "things of value;" specifically, (1) access to the hotel, (2) updated lists of employees and their home addresses, and (3) participation in the card check. Defendant also alleges that the provision of the Neutrality Agreement requiring that it refrain from making any statements, other than those that would be considered neutral to the union's presence, could be considered a "thing of value" in violation of LMRA. We find this argument meritless. Plaintiff correctly notes that the bribery and secrecy LMRA Section 302 sought to address are not at issue in this case. Defendant's reading of the statute is clearly out of context and irrelevant to the current matter.

Finally, the parties contest the legality of the City's actions in passing Ordinance 22, which requires evidence of labor peace as a contingency of the TIF. Defendant argues that such an action is preempted by the supremacy clause. Plaintiff, however, alleges that the City's actions were proper pursuant to the proprietor doctrine, as stated in *Building & Construction Trades v. Associated Builders & Contractors,* 507 U.S. 218, 227, 113 S.Ct. 1190, 122 L.Ed.2d 565 (1993) (the "Boston Harbor" case). Because the legality of the City's actions is not dispositive in this case and because the City is not, itself, a party to this action, we need not decide this issue. Regardless of legality of the City's actions, we find that the decision in this case turns on the validity of the Neutrality Agreement itself, independent of Ordinance 22.

■ Because we find the contract to be legal, Sage must prove that the Neutrality Agreement is otherwise invalid. *Mellon Bank, N.A.,* 619 F.2d at 1009. Sage alleg-

es that the Neutrality Agreement is void because it was entered into under economic duress. This economic duress was allegedly caused by the City's threat to revoke its contribution toward the $3.6 million in TIF.

In order to raise the defense of duress, a party must prove three elements: (1) a wrongful threat; (2) fear that induces a loss of free will and judgment; and (3) that there was no immediate legal remedy available as an alternative to executing the agreement. *Warner–Lambert Pharmaceutical Co. v. Sylk*, 471 F.2d 1137, 1143 (3d Cir.1972); *Levin v. Garfinkle*, 492 F.Supp. 781, 807 (E.D.Pa.1980), aff'd, 667 F.2d 381 (3d Cir.1981).

Defendant's assertion of economic duress amounts to little more than a conclusory statement without adequate support. Financial distress is not enough to necessitate a finding of economic duress. *See Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 911 (3d Cir.1985). Also, there is a presumption under Pennsylvania law against finding duress where a party is free to consult with legal counsel. *Carrier v. Wm. Penn Broadcasting, Co.*, 426 Pa. 427, 233 A.2d 519, 521 (1967). Defendant's own timeline of events proves that this case lacks the immediacy needed to find economic duress.

Furthermore, economic duress merely makes a contract voidable, not void. *Agathos v. Starlite Motel*, 977 F.2d 1500, 1506 (3d Cir.1992). Even if economic duress could be shown at the time of formation, the undisputed facts of the case show that defendant never complained of duress until plaintiff attempted to procure defendant's participation in the card check. By remaining silent, defendant ratified the contract. A party cannot sit idly by and receive benefits under a contract and then later raise claims of economic duress.

*Seal v. Riverside Savings Bank*, 825 F.Supp. 686, 696 (E.D.Pa.1993) (citing *National Auto Brokers Corp. v. Aleeda Dev. Corp.*, 243 Pa.Super. 101, 364 A.2d 470, 476 (1976)).

## IV. CONCLUSION

For the reasons stated above, we find that defendant cannot avoid the Neutrality Agreement. Because the parties concede that the agreement, if valid, requires that the parties' dispute be resolved in arbitration, we find that plaintiff's requested order to compel arbitration should be granted. Plaintiff's motion for summary judgment is granted. Defendant's motion for summary judgment is denied. The parties are ordered to resolve their dispute through arbitration. The clerk shall mark the docket as closed.